**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Marciniak, | No. CV-20-01979-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Veritas Technologies LLC, | |
| Defendant. | |

Pending before the Court is Defendant Veritas Technologies, LLC's ("Veritas") Motion to Dismiss (Doc. 17). The Plaintiff, Ryan Marciniak, has filed a response, (Doc. 20), and Defendant a reply. (Doc. 22.)  Oral argument was heard on April 20, 2021 and the matter was taken under advisement.  The Court now issues a ruling.

**I. BACKGROUND**

The following are facts alleged in Plaintiff's Amended Complaint ("AC" Doc. 15). Plaintiff started his job with Veritas on July 9, 2018 and still works for Veritas.[1]  Veritas is an American international data management company specializing in storage management software.  Plaintiff's duties focus on providing customers with Data Back-up, recovery and resiliency products.  Plaintiff is part of the Global Sales Compensation Operations for Veritas.

The AC has a number of factual assertions that relate to the Fiscal Year 2019 but at

---

[1] While the Complaint alleges Plaintiff continues to be employed by Defendant, at oral argument Defendant's counsel stated that Plaintiff very recently voluntarily left his position with the company.

oral argument Counsel stated they were only disputing commissions earned during the first three quarters of fiscal year 2020. Nevertheless, the AC alleges that during Plaintiff's employment negotiations, the Director of Sales, Keith McMannigal orally committed to pay Plaintiff a first quarter non-recoverable draw equal to 100% of his first quarter Quota Attainment. That promise was never reflected in Plaintiff's offer letter. Plaintiff alleges that he never received $38,000 that he was owed during this period.

The Global Sales Compensation Plan for Fiscal Year 2020 ("Plan") was entered effective March 30, 2019. Plaintiff was a participant in the Plan. Veritas agreed that it would pay Mr. Marciniak a base salary and he was eligible to receive incentive payments. In addition to the Plan, Plaintiff had an individualized compensation plan for FY 2020 which provided for Plaintiff to be paid a commission. Plaintiff was assigned certain named accounts and had to reach certain sales goals ("quotas"). Quotas were defined in the Plan as "[t]he sales or services target or goal assigned to a Territory. Quotas are assigned on an annual basis. Examples of Quotas include but are not limited to the value of the target bookings of product, license, renewal, and services." (Doc. 21-1 p. 7). During FY 2020, the incentive payments were paid based on bookings, which are binding commitments for orders of products or services.

When Plaintiff started at Veritas, he was assigned approximately half of the customer accounts in the Arizona territory and another salesperson, Mr. Lind, had the rest. Mr. Lind left Veritas on April 5, 2019 and Plaintiff took over his accounts. The details of Plaintiff's quotas were set out in his individualized compensation plan on May 15, 2019. That individualized plan was approved by five levels of management. Quotas were set for two separate types of sales, Hardware/Software sales and Renewals/Support sales. Renewals/Support sales related to customers that agree to continue to use maintenance on products or services purchased in the past. Veritas assigned the following quotas to Plaintiff:

Hardware/Software:
Q1 = 4/1/19-6/30/19 $202,414.89

    Q2 = 7/1/19-9/30/19 $294,005.34

    Q3 = 10/1/19-1/3/20 $428,512.45

    Q4 = 1/6/20-3/31/20 $383,502.29

        TOTAL: $1,308,434.97

Renewals/Support:

    Q1 = 4/1/19-6/30/19 $76,989.73

    Q2 = 7/1/19-9/30/19 $111,826.72

    Q3 = 10/1/19-1/3/20 $162,987.31

    Q4 = 1/6/20-3/31/20 $145,867.42

        TOTAL: $497,671.18

At no time before or after Mr. Lind's departure did Veritas modify the quota assigned to Plaintiff for Q1 in Renewals/Support. Veritas paid $215,275.54 to Plaintiff on October 31, 2019. Plaintiff alleges that he exceeded the quotas assigned by Veritas by such a degree that he had earned the 5X multiplier in the Plan.

On December 2, 2019, Veritas provided notice that it was or would be conducting an internal review and it might adjust Plaintiff's quotas for Q4. A link was provided to Plaintiff by email on December 4, 2019. The link led to new quotas for all four quarters as applied to Renewals/Support. The modified individualized plan made no changes to the quotas for Hardware/software sales. The new quotas for Renewals/Support were as follows:

    Q1 = 4/1/19-6/30/19 $360,173.89

    Q2 = 7/1/19-9/30/19 $523,148.50

    Q3 = 10/1/19-1/3/20 $762,488.35

    Q4 = 1/6/20-3/31/20 $682,397.97

        TOTAL: $2,328,208.70

Plaintiff objected to the changes because it would reduce his compensation for FY 2020 by hundreds of thousands of dollars. On December 20, 2019, Plaintiff told Veritas that he would not sign the revised individualized compensation plan. Plaintiff demanded that Veritas abide by the May 1, 2019 individualized compensation plan. When they

refused, Plaintiff retained counsel.

Since Plaintiff refused to sign the December 4, 2019 modification, Veritas has not paid any commissions, bonuses, or "sales spiffs" to Plaintiff. According to the AC, Veritas has refused to pay Mr. Marciniak the commissions for Renewals/Support and for Hardware/Software due to Mr. Marciniak under the revised FY20 Individualized Compensation Plan (a) in retaliation for his refusal to sign the Veritas December 4, 2019 revised FY20 Individualized Compensation Plan for him and (b) to coerce him to sign the Veritas December 4, 2019 revised FY20 Individualized Compensation Plan. Additionally, Plaintiff alleges Veritas has failed to pay commissions to him for FY 2021 even though he has signed the individualized compensation plan for 2021.

Plaintiff's AC brings five claims against Veritas: Counts 1, 2 and 3 are for breach of contract. Count 4 is for breach of the covenant of good faith and fair dealing and Count 5 is for retaliation, coercion, and ill will. Defendants have moved to dismiss the AC arguing that: (1) the Plan is not a binding contract; (2) If the Plan is a contract, there is no breach; (3) The claim for breach of implied covenant of good faith and fair dealing is factually and legally meritless; and (4) The claim for retaliation, coercion or ill will is not a recognized cause of action. Additionally, Defendant argues the AC should be dismissed without prejudice because Mr. Marciniak failed to exhaust his nonjudicial remedies.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if

accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

"A party does not need to plead specific legal theories in the complaint, as long as the opposing party receives notice as to what is at issue in the lawsuit." *Electrical Constr. & Maint. Co. v. Maeda Pacific Corp.*, 764 F.2d 619, 622 (9th Cir.1985). "The complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Pruitt v. Cheney*, 963 F.2d 1160, 1164 (9th Cir. 1991), amended (May 8, 1992) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 336–37 (1990)). As such, the Court must

examine whether the allegations of Plaintiff's AC support relief under any theory of applicable Arizona law[2].

### III. DISCUSSION

To state a cause of action for breach of contract, the Plaintiff must plead facts alleging "(1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Dylan Consulting Servs. LLC v. SingleCare Servs. LLC*, No. CV-16-02984-PHX-GMS, 2018 WL 1510440, at *2 (D. Ariz. Mar. 27, 2018). In the present case, the Defendant alleges Plaintiff has failed to state a claim because: (1) no binding contract existed between the parties, and (2) even if the Plan did constitute a contract, the Defendant has not breached the Plan terms.

#### A. The Plan

Defendant's first argument is that the Plan is not a valid contract because the Terms and Conditions set forth in the Plan allow Veritas to modify the Plan proactively or retroactively in its sole discretion. Defendant cites many cases, outside of Arizona to support the proposition that the reservation of discretion to modify a plan makes an offer too indefinite to form a contract. *See Schwarzkopf v. Int'l Bus. Machines, Inc.*, No. 08-2715, 2010 WL 1929625, at *1 (N.D. Cal. May 12, 2010); *Rakos v. Skytel Corp.*, 954 F.Supp. 1234, 1237–38 (N.D. Ill. 1996) (finding no contract where defendant "retained the right to modify or cancel the Plan at any time without prior notice" and so did not provide "a clear right to bonus commissions"); *Foss v. Am. Tel. & Telegraph Co.*, 605 N.Y.S.2d 143, 144 (N.Y. App. Div. 1993) (concluding language authorizing defendant to "reduce, modify, or withhold compensation or noncash awards based on … management determination of special circumstances at any time for any reason with or without prior notice" conferred no rights on plaintiff); *Jensen v. IBM, Corp.*, 454 F.3d 382, 385–88 (4th Cir. 2006) (finding no binding contract where employer retained discretion to cancel or modify incentive program at any time up until it made payment under the plan). Plaintiff

---

[2] Federal courts sitting in diversity apply substantive state law to state-law claims. *Lukes v. American Family Mut. Ins. Co.*, 455 F.Supp. 1010, 1013 (D. Ariz. 2006).

- 6 -

distinguishes these cases because all modifications were made before payments were made to the employee. He argues that once payment is made, his rights vested.

Plaintiff argues that the reservation of discretion to proactively or retroactively modify quotas by Veritas does not render the Plan an invalid contract. Plaintiff argues that reading those discretionary clauses in the context of the entire plan and the parties performance makes the Plan a valid contract. Plaintiff offers two reasons: (1) the Plan acted as a unilateral offer that was accepted by partial performance and that Veritas's right to make retroactive modification ceased for each state at the time of payment, and (2) the discretion afforded to Veritas in the Plan was not unlimited.

The Court finds that the discretion granted to Defendant in the Plan does not render the parties' agreement illusory. The Arizona Supreme Court has long recognized the rule that "an agreement which permits one party to withdraw at his pleasure is void." *Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588 (1977). However, interpretations which render contracts void are highly disfavored in Arizona law. *Shattuck*, 115 Ariz. at 589 ("[i]t is a long-standing policy of the law to interpret a contract whenever reasonable and possible in such a way as to uphold the contract."); *Hall v. Rankin, 22 Ariz.* 13, 15, 193 P. 756(1920)("Where a . . . contract as a whole is susceptible of two meanings, one of which will uphold the contract … and the other of which…render[s] it invalid, the former will be adopted.")(internal quotes and citations omitted). Thus, if among the plausible interpretations of the Plan's terms is one which allows the contract to be upheld, the Court should prefer that interpretation. *Shattuck*, 115 Ariz. at 589.

Further, the Arizona Supreme Court has previously held that a discretionary clause modifying the promise of commission did not invalidate the contract. *Allen D. Shadron, Inc. v. Cole*, 101 Ariz. 122, 124, 416 P.2d 555, opinion supplemented on reh'g, 101 Ariz. 341, 419 P.2d 520 (1966). In *Shadron* the Court held that even though the contract stated commissions would be subject to the employer's discretion, the use of the word discretion "required Shadron to act on sound judgment since it excludes arbitrary, unreasonable or oppressive acts". *Id* at 124; *see also*, *Tamayo v. Lizarraga*, 2008 WL 4416049 (Ariz. App.

Div. 1, Sep. 25, 2008) (noting a contractual provision allowing a party to decide in his "discretion" does not allow "unlimited choice."). Based on this interpretation, the Court upheld the contract even though its terms left the decision of whether to grant a commission solely to the employer's discretion. *Id.*

In this case, the Plan (Doc. 21-1) was not attached to the AC, but has been considered by the Court.[3] The Plan does afford discretion to the Company to modify all aspects of the Plan.  (Doc. 21-1, p. 10.) However, "[n]o modification will be effective unless in writing and approved in accordance with the published FY20 Sales Compensation Governance Approval Matrix and/or the terms of this Plan. The approval process need not be complete before a modification becomes effective – approval can be given retroactively." *Id.*  Further, the Plan sets forth specific circumstances in which retroactive modifications to employee compensation may be made.  (Doc. 21-1, p. 11).  In light of Arizona's disfavor of interpretations which render a contract void, Arizona's previous affirmation of the validity of a commission agreement modified by a discretionary clause, and the limitations of the exercise of discretion present in the Plan, the Court finds that the plan does not afford unfettered discretion as Defendant argues.  The AC adequately pleads the existence of a contract that provides for an incentive plan.  The discretion afforded the company does not render the contract illusory.

### B. Breach of Contract

Defendant argues that even if the Court finds that the Plan creates a contract, there is no breach because Veritas's actions were all allowed under the contract.  Plaintiff counters that while modification may be allowed, it must be for good reason.  Under Arizona law, a party cannot unilaterally change the terms of a contract. *Demasse v. ITT Corp.*, 984 P.2d 1138, 1144 (Ariz. 1999) (noting the "traditional contract law" rule that,

---

[3] While a court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss the court may "consider materials…incorporated by reference in the complaint…without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003).

once a contract is formed, "a party may no longer unilaterally modify the terms" unless there is assent to and consideration for the offer to modify). While the Plan in this case expressly provided for modification, Plaintiff plausibly claims that it cannot be done without good reason.

The decision in *Olson v. McKesson Corp.*, No. CV-04-2428-PHXFJM, 2006 WL 2355393 (D. Ariz. Aug. 14, 2006) is instructive. In *Olson*, Plaintiff's commission rate was unilaterally and retroactively reduced by her employer. The plan in *Olson* contained a reservation of the right to modify the Sales Incentive Compensation Plan "as deemed appropriate to handle unusual and/or unanticipated situations" and went on to provide examples of such situations. *Id.* at *1. The Court held that the Sales Incentive Compensation Plan did not allow modifications for "mere buyer's remorse". *Id.* at *2. Here, the Court is merely determining the adequacy of the pleadings. Plaintiff has adequately pled that the Defendant's rational was not a valid reason for modification under the Plan. The Court finds that the AC states a claim for relief that is plausible on its face.

### C. Good Faith and Fair Dealing

The AC alleges only that Veritas breached the implied term of good faith and fair dealing by failing to compensate Plaintiff. Nothing more was alleged. In his Response, Plaintiff argues that Veritas breached the covenant of good faith and fair dealing by the manner in which Veritas exercised its claimed discretion. (Doc. 20, p. 14). That Veritas exercised its discretion in a manner that violated the duty of good faith and fair dealing was not alleged anywhere in the AC although those facts, if alleged, may support such a claim. Plaintiff also argues that there was a breach of this duty by withholding both FY 2020 and FY 2021 commission payments. While not very clearly set out or plead as a specific theory of relief or cause of action, the facts to support such a claim are present in the AC. *See Electrical Constr. & Maint. Co.*, 764 F.2d at 622 ("A party does not need to plead specific legal theories in the complaint, as long as the opposing party receives notice as to what is at issue in the lawsuit."). In light of this, the Court will not dismiss the claim for breach of the duty of good faith and fair dealing.

### D. Retaliation, Coercion, Ill Will

Defendant argues that Count Five must be dismissed because there is no civil cause of action for "coercion" or "ill-will" nor is there any statutory basis for a retaliation claim in this context. Plaintiff provides no legal basis for this claim in his Response and the Court could find none. Further, at oral argument the Court asked Plaintiff to explain the statutory or common law basis supporting his right to bring this cause of action, but Plaintiff was unable to articulate the legal basis granting him a right of action to pursue this claim. As such, count Five will be dismissed.

### E. Nonjudicial Remedies

The Plan contains a dispute resolutions section. The policy requires the plan participant to notify his/her direct manager immediately via email. (Doc. 21-1, p. 37) The managers are supposed to then work with the appropriate accounting team to determine the circumstances and resolve any issue. *Id.* The policy also provides that further escalation is available if needed. *Id*. Defendant argues that Plaintiff did not satisfy these requirements. Looking at the facts in the FAC, and taking them as true, the Court disagrees. Plaintiff alleges that he objected to the modified individualized compensation plan, told Veritas what his objection was clearly, and continued discussions with Veritas after he hired counsel. Those are sufficient allegations to survive a motion to dismiss under rule 12(b)(6).

### IV. CONCLUSION

**IT IS ORDERED denying** Defendant's Motion to Dismiss (Doc. 17) as to Counts 1 – 4 but **granting** the motion as to Count 5.

Dated this 26th day of April, 2021.

_____
Honorable Susan M. Brnovich
United States District Judge

- 10 -