**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Marciniak, | No. CV-20-01979-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Veritas Technologies LLC, | |
| Defendant. | |

Pending before the Court is Defendant Veritas Technologies, LLC's ("Veritas") Motion for Summary Judgment. (Doc. 73.) Also before the Court are Plaintiff's Amended Response (Doc. 93) and Defendant's Reply (Doc. 96). The Court heard oral argument on December 14, 2022. After reviewing the parties' arguments and the relevant law, the Court will grant Veritas' Motion for the following reasons.

**I.     BACKGROUND**

The parties are entangled in a wage dispute. Veritas is a data management company that specializes in storage management software. (Doc. 74 at 2.) Plaintiff worked for Veritas as a new sales account manager from July 2018 to May 2021. (*Id.*) Veritas hired Plaintiff to reel in new customers in his assigned economic territory, Intermountain 7. (*Id.* at 2–3.) The parties agreed that Veritas would pay Plaintiff a $152,000 base salary with an additional $152,000 available if Plaintiff met his entire sales quota, as established by the company's incentive compensation plan ("ICP"). (*Id.* at 3.) Veritas' new sales manager assigned to Intermountain 6, John Lind, left Veritas in

April 2019. (*Id.* at 3–4.) Veritas thus merged Intermountain 6 with Intermountain 7 and then re-assigned many of Lind's former accounts to Plaintiff. (*Id.* at 5.)

Confusion arose when Veritas began preparing ICPs for fiscal year 2020—which begins April 1 and ends March 31 each year. (*Id.* at 3, 5.) In April 2019, Veritas began assigning renewal sales quotas to new sales account managers. (*Id.* at 5.) Renewal sales account managers had been exclusively tasked with "ensuring existing Veritas customers renewed already existing contracts and licensing arrangements." (*Id.* at 2.) Veritas' new sales and renewal sales territories did not necessarily overlap, so Veritas required new sales managers to provide a report of renewal opportunities in their territories. (*Id.* at 5–6.) This report would inform the next fiscal year's ICP. Plaintiff "had little visibility into renewal opportunities associated with" his newly merged territory. (*Id.* at 6.) After receiving renewal account data for fiscal year 2019, Plaintiff submitted his report and then agreed to his ICP for fiscal year 2020 ("2020 ICP"). (*Id.* at 6–7.) The 2020 ICP set Plaintiff's annual quotas at $1,308,434.97 for new business and $497,671.18 in renewals. (*Id.* at 7.)

From May to July 2019, Plaintiff received his base salary plus an additional $7,600 per month. (*Id.*) Veritas then issued Plaintiff commission payments in the following amounts: $46,976.99 in August; $72,323.43 in September; and $215,265.54 in October. (*Id.*) Plaintiff's October commission payment led to an internal review. (*Id.*) Veritas eventually determined Plaintiff was not "carrying quota" for his assigned renewal customers but was nonetheless receiving commission payments because of a mistake. (*Id.* at 8.) Veritas then corrected Plaintiff's renewal quota to $2,328,208.70 and sent Plaintiff a revised 2020 ICP to be accepted by December 4, 2019. (*Id.* at 9–10.) Plaintiff never accepted. (*Id.* at 10.) Veritas then began deducting Plaintiff's later commission earnings to recoup what it considered mistaken overpayments. (*Id.* at 10.) Plaintiff continued working for Veritas after filing this lawsuit. *See Marciniak v. Veritas Techs. LLC*, No. CV-20-01979-PHX-SMB, 2021 WL 1627250, at *1 n.1 (D. Ariz. Apr. 27, 2021).

Veritas withheld $211,592.08 of the $224,835.37 it believes it mistakenly overpaid Plaintiff. (Doc. 74 at 11.) Plaintiff continued working for Veritas after filing this lawsuit, but he has since left the company. *See Marciniak*, 2021 WL 1627250, at *1 n.1. Plaintiff raises many claims in his Second Amended Complaint including: (1) breach of contract; (2) breach of employment contract from failure to pay wages; (3) breach of contract seeking specific performance; (4) breach of the implied covenant of good faith and fair dealing; (5) fraudulent misrepresentation; (6) negligent misrepresentation; (7) quantum meruit; and (8) unjust enrichment. (Doc. 32 at 15–26.) Veritas now moves for summary judgment on all claims. (*See* Doc. 73 at 2.)

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* at 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry

its initial burden, the non-movant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the non-movant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The non-movant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the non-movant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

**III.    DISCUSSION**

When sitting in diversity jurisdiction, federal courts apply federal procedural law and state substantive law. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). Arizona law therefore applies to Plaintiff's claims. *See id.*

**A.    Contract Claims**

**1.    Validity of the Contract**

Veritas argues summary judgment is appropriate on Plaintiff's breach of contract claims (Claims I—III) because the 2020 ICP is not an enforceable contract. Relying on the terms and conditions underlying ICPs (*see* Doc. 21-1), Veritas asserts it disclaimed "the existence of a contract" by retaining unilateral authority to modify ICPs. Plaintiff contends the parties had an employment contract and the commission payments he received fall under Arizona's definition of "wages." *See* A.R.S. § 23-350(7)

("[N]ondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid.").

"The employment relationship is contractual in nature." A.R.S. § 23-1501(A)(1). Not all handbook terms, like the ICP terms and conditions, create contractual promises. *See Demasse v. ITT Corp.*, 984 P.2d 1138, 1143 (Ariz. 1999). Statements are generally only contractual if they disclose "promissory intent" or if the employee "could reasonably conclude" they constituted an employer's commitment. *Shumway v. DHL Express (USA), Inc.*, No. CIV 06-1188-PHX-DKD, 2008 WL 11338792, at *9 (D. Ariz. Sept. 29, 2008). "When an employer promises to pay a commission to find a purchaser, and the employee accepts the offer and performs, both parties are bound and the employer is liable to the employee for any breach of the contract." *Id.* (citing *Mitchell v. Vulture Min. & Mill. Co.*, 55 P.2d 636, 642–43 (Ariz. 1936)). There is no dispute that Veritas agreed to pay Plaintiff commissions for soliciting new business and facilitating renewal business.

Although Veritas clings to the 2020 ICP's language "disclaiming" the existence of an employment agreement, the Court concludes that the 2020 ICP was a contract. First, the Court notes that despite its previous ruling, Veritas cites no Arizona authority to support its position that courts routinely dismiss similar contract claims. (*See* Doc. 73 at 4.) As the Court had previously identified, the Arizona courts recognize contracts as valid despite clauses that preserved unilateral discretion to modify commissions. *See Marciniak*, 2021 WL 1627250, at *4 (citing *Allen D. Shadron, Inc. v. Cole*, 416 P.2d 555 (1966)). That discretion does not render the contract illusory. *Id.* Veritas cites only out-of-jurisdiction authority that the Court finds minimally persuasive. Second, the 2020 ICP's terms and conditions set forth the rules that govern the apparent employment relationship that the parties created. If Plaintiff solicited new business and followed Veritas' guidelines, then Veritas promised to compensate Plaintiff with commissions. *See Shumway*, 2008 WL 11338792, at *9. Finally, the Court notes that the "No

Employment Agreement" disclaimer in the 2020 ICP's terms and conditions only memorializes the parties' intent to maintain an at-will employment relationship. (*See* Doc. 21-1 at 15.) Neither that clause, nor any other, disclaims an employment relationship altogether—it only disclaims any "guarantee of employment for any specific time." (*Id.*)

### 2. Plaintiff's Reasonable Expectations

Given that a contract exists, the Court's primary inquiry is thus whether Plaintiff could reasonably conclude he had earned the commission payments that Veritas later recouped. *See Shumway*, 2008 WL 11338792, at *10. Core to Plaintiff's reasonable expectations argument, Plaintiff asserted the commissions he earned were consistent with the 2020 ICP, which he argued was segmented by quarterly quotas. Plaintiff made two concessions that render his expectations unreasonable: his initial renewal quota amount was set by mistake, and the quota was not quarterly.

Plaintiff did not dispute that Veritas assigned him a smaller quota by mistake. Plaintiff received an email informing him that his territory's renewal sales target from the previous fiscal year was $2.4 million, and that "they needed to plan to achieve $2.7M in renewals." (Docs. 74 at 6; 94 at 3.) But Veritas assigned Plaintiff a renewal quota of only $497,671.18—nearly $2 million less than the anticipated target amount. (Doc. 74 at 7 ¶ 35.) In his statement of contravening facts, Plaintiff did not dispute that: "Veritas ultimately confirmed [Plaintiff] was not carrying quota for all the renewal opportunities for his customer set, yet was receiving quota retirement (i.e. commission credit) for those opportunities. Due to this **error**, [Plaintiff] significantly exceeded his year-to-date expectations for his . . . Renewal Quota." (*See* Docs. 74 at 8; 94 at 3 (emphasis added)). Put simply, Plaintiff acknowledged that the lower quota amount was an error, and he received commission payments because of that error.

Plaintiff's other reasonable expectations argument fails because the 2020 ICP set an annual, not quarterly, quota. Plaintiff argues that even if Veritas assigned him the wrong quota, that error did not bind him because he reasonably expected to receive

commissions for three quarters of performance. Plaintiff agreed that Veritas could *prospectively* adjust quotas, but he argued that the 2020 ICP forbid *retroactive* reductions to earned commissions. (Doc. 93 at 5–6, 9.) Because Plaintiff characterized the 2020 ICP as having quarterly quotas, he claims to have relied on and performed in accordance with those quotas. But Plaintiff's deposition testimony paints a different picture. Plaintiff testified, consistent with Veritas' description of the 2020 ICP, that the quotas were annual, "[b]ased on an annual number," and "segmented by quarter." (Doc. 74-3 at 19.) Plaintiff's deposition testimony is consistent with the 2020 ICP terms and conditions, which defines quota in part as being "assigned on an annual basis." (Doc. 21-1 at 7.)

Taken together, no reasonable factfinder could determine that Plaintiff's expectations were reasonable. Plaintiff received notice that his renewal quota would likely be six times larger than his actual assignment, and he did not dispute that the quota calculation was a mistake. Considering that Plaintiff knew Veritas assigned only an annual quota, and not quarterly quotas, he cannot both recognize Veritas' miscalculation and have reasonably expected to keep the overpayments.

### 3. Whether the Quota Adjustment Process was Followed

Plaintiff contends an issue of material fact remains about whether Veritas followed the quota adjustment procedure outlined in the 2020 ICP terms and conditions. (Doc. 93 at 6–7.) Plaintiff argues the terms and conditions required a case-by-case review for retroactive changes, and quota changes during the fiscal year required approval by "first and second line managers." (*Id.* at 6.)

Veritas disputes Plaintiff's characterization of the quota adjustment as retroactive and instead cites the quotas' annual nature to argue that those changes were prospective. (Doc. 96 at 8.) The Court agrees that changes to the annual quota are prospective, as those changes affected what that fiscal year's quota would be and not what a previous fiscal year's quota was. (*See* Doc. 21-1 at 11 ("Quotas – may be increased or decreased prospectively in situations, including, but not limited to, . . . where errors are made in

quota setting.")) Veritas did not fail to follow its own processes in this regard because a case-by-case review was not required for prospective changes.

Plaintiff argues multiple line managers, Brian Coldrick and Dennis Brien, needed to approve any changes to Plaintiff's quota that occurred during the fiscal year. (Doc. 93 at 6.) The 2020 ICP terms and conditions state: "Changes to quotas will require review and approval by Sales Management . . . EVP of WW Field Operations and/or his/her designee(s) and/or EVP Customer Success." (Doc. 21-1 at 11.) Plaintiff seems to suggest Veritas skipped gaining Coldrick and Brien's approval before seeking review from the compensation exceptions committee. (*See* Doc. 94 at 10 ¶¶ 118–19.) But the cited deposition testimony from Beth Kilgo stated that to her knowledge, the appropriate process was followed, including the required approval from Coldrick and Brien. (Doc. 74-6 at 45–46.) Plaintiff points to no other evidence to support his assertion that neither Coldrick nor Brien approved of the quota change.

### 4. Plaintiff's Entitlement to a $50,000 SPIFF

Plaintiff claims Veritas failed to pay him a $50,000 SPIFF—a bonus unrelated to his quota. (Doc. 93 at 7.) To support his claim, Plaintiff cites an email Veritas sent in November 2019 that outlined a bonus sales opportunity. (Doc. 88-2 at 13–14.) In that email, Veritas' employee informs Plaintiff and other sales representatives that the bonus will be dictated by annual contract value and the representative's personal commission rate. (*Id.* at 13.) In its Reply, Veritas asserts that Plaintiff cites no record evidence "explaining the specifics of the 'SPIFF' to which he claims entitlement." (Doc. 96 at 3 n.2.) The Court agrees. Plaintiff only cites the November 2019 email and allegations from the Second Amended Complaint. (*see* Docs. 93 at 7; 94 at 10 ¶¶ 116–17.) Plaintiff identifies no record evidence, and the Court has found none, that shows Plaintiff actually closed a sale with the customer identified in his Response (*see* Doc. 93 at 7) or Veritas' acknowledgement that it would pay him such a bonus.

Because there is no genuine dispute of material fact as to whether Plaintiff's expectations for compensation were reasonable, as to whether Veritas followed the quota

1 adjustment procedure outlined in the terms and conditions, and as to whether Plaintiff
2 was owed a $50,000 bonus, the Court will grant summary judgment in Veritas' favor for
3 Plaintiff's breach of contract claims.

### B. Contract Alternative Claims

Veritas argues summary judgment is also appropriate on Plaintiff's alternative contract claims (breach of the covenant of good faith and fair dealing and unjust enrichment).

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Keg Rests. Ariz., Inc. v. Jones*, 375 P.3d 1173, 1186 (Ariz. Ct. App. 2016). The implied covenant of good faith and fair dealing protects a party's right to receive the benefits of an agreement they entered. *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1038 (Ariz. 1985). "In the context of an employment contract, the remedy for a breach of the implied covenant of good faith and fair dealing is limited to contractual damages." *Aubuchon v. Maricopa Cnty.*, No. 1 CA-CV 19-0799, 2020 WL 7024677, at *4 (Ariz. Ct. App. Nov. 24, 2020) (citing *Nelson v. Phx. Resort Corp.*, 888 P.2d 1375, 1385 (Ariz. Ct. App. 1994)). Arizona law also allows parties to recover for unjust enrichment when they can establish the following five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011).

Plaintiff contends Veritas acted in bad faith by "unilaterally rewrite[ing] their agreement" and impairing his ability to receive the benefits from that agreement. The Court finds Plaintiff has not supported this characterization with citations to record evidence. The 2020 ICP terms and conditions contemplates errors in quota setting (*see* Doc. 21-1 at 11) and changes to quota setting that would occur from windfalls (*see id.* at 12). Specifically, the terms and conditions explain that each fiscal year will end with "year-end closing and reconciliation of Plan Participant's Individualized Compensation Plan/s." (*Id.* at 12.) Plaintiff gives a bare assertion that Veritas breached its duty to act in

good faith. (Doc. 93 at 13.) The evidence shows the contrary, as consistent with the terms and conditions, which explains that errors in quota setting will lead to an adjustment and any overpayment would be deducted from various sources of employee payments, including incentive compensation (future commissions). (Doc. 21-1 at 22–23.) Kilgo's deposition testimony, among others, stated that Plaintiff was overpaid. (Doc. 74-6 at 56.) Plaintiff offered no competing evidence other than his own self-supporting statements to establish his entitlement to the payments he received. Thus, there is similarly no evidence to establish that Plaintiff was impoverished while Veritas was enriched. Absent a genuine dispute of material fact, the Court must grant summary judgment in Veritas' favor on Plaintiff's implied covenant and unjust enrichment claims.

### C. Veritas' Counterclaim

Veritas claims it is also entitled to summary judgment on its counterclaim which seeks the $13,243.29 in allegedly overpaid funds. Given the Court's ruling on Plaintiff's claims, it follows that Plaintiff remains liable on the outstanding overpayment amount. Plaintiff does not dispute the amount of overpayment (*see* Docs. 74 at 11; 94 at 4.). The Court will thus grant summary judgment on Veritas' counterclaim.

### D. Tort Claims

Veritas argues Plaintiff cannot establish fraudulent misrepresentation because Veritas never deceived Plaintiff. Similarly, Veritas argues Plaintiff cannot assert a negligent misrepresentation claim in the employment context.

#### 1. Fraudulent Misrepresentation

Fraudulent misrepresentation under Arizona law requires:
> a showing of "a false material representation made with the speaker's knowledge of its falsity or ignorance of its truth and with the intent that it be acted upon by the listener; the listener's ignorance of its falsity, reliance on its truth, and the right to rely on its truth; and consequent and proximate injury."

*Sonoran Res., LLC v. Oroco Res. Corp.*, No. CV-13-01266-PHX-JJT, 2015 WL 11089497, at *9 (quoting *Dillon v. Zeneca Corp.*, 42 P.3d 598, 603 (Ariz. Ct. App. 2002). "Fraud may not 'be established by doubtful, vague, speculative, or inconclusive

evidence.'" *Id.* (quoting *Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 562 (Ariz. Ct. App. 1998).

In his Second Amended Complaint, Plaintiff alleged Veritas fraudulently represented that "he would receive commissions, bonuses, and Sales Spiffs" for performing under the ICPs "even though [Veritas] knew that Veritas would unilaterally modify them contrary to their terms." (Doc. 32 at 20–21.) Veritas argues Plaintiff cannot establish that Veritas acted with the requisite intent. The Court agrees that no record evidence supports Plaintiff's assertion that Veritas crafted his ICPs with the latent intent of retroactive modification. The Court finds unpersuasive Plaintiff's citation to Veritas' promise of high compensation for meeting high performance expectations as proof of Veritas' alleged intent to deceive him. The Court again notes that Plaintiff did not dispute that the quota calculation was made by mistake. As such, the Court will grant Veritas' Motion as to Plaintiff's fraudulent misrepresentation claim.

### 2. Negligent Misrepresentation

Arizona recognizes the tort of negligent misrepresentation as articulated in the Restatement (Second) of Torts § 552. *Mur-Ray Mgmt. Corp. v. Founders Title Co.*, 819 P.2d 1003, 1008 (Ariz. Ct. App. 1991). Section 552 provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Plaintiff contends that a jury could find that when it made the representations about commission payments, Veritas had a present intent to never perform.

Plaintiff's claim fails as a matter of law because all of Veritas' representations involved promises of future payments. *See Crofton v. CIT Grp., Inc.*, No. CV 09-1999-PHX-FJM, 2011 WL 1211566, at *5 (D. Ariz. Mar. 30, 2011) ("There is no 'present intent to deceive' exception for negligent misrepresentation." (citing *McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992))). "A promise of future conduct is

not a statement of fact capable of supporting a claim of negligent misrepresentation." *Mcalister*, 829 P.2d at 1261. Plaintiff argues that Veritas misrepresented that he would receive and retain commissions and bonuses in accordance with the incentive compensation plans. (Doc. 32 at 23 ¶¶ 135, 137.) Veritas' alleged misrepresentations addressed only promises to pay Plaintiff for future performance—they do not address present entitlements to compensation when the representations were made. *See Crofton*, 2011 WL 1211566, at *5 ("Any alleged unkept promise cannot support a negligent misrepresentation claim."). The Court will therefore Grant Veritas' Motion as to this claim.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Veritas' Motion for Summary Judgment. (Doc. 73.)

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

**IT IS FURTHER ORDERED** that Veritas file a Motion for Attorneys' Fees in compliance with Federal Rule of Civil Procedure 54.

Dated this 26th day of January, 2023.

Honorable Susan M. Brnovich
United States District Judge